# Richmond

## Frank Rosser Gough v. E. H. Shaner, Administrator of the Estate of E. H. Shaner, Jr., Deceased.

November 28, 1955.

Record No. 4426.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Williams, Robertson, Sackett & Blackburn,* for the plaintiff in error.

*Basil G. Watkins,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

On the afternoon of March 4, 1954, a motorcycle operated by Jimmy B. Overstreet, aged fifteen years, upon which E. H. Shaner, Jr., aged thirteen years, was also riding collided at a street intersection in the city of Lynchburg with an automobile operated by Frank Rosser Gough. Young Shaner was instantly killed in the collision and E. H. Shaner, his father and administrator, brought an action against Gough under § 8-633, Code of 1950, to recover damages for the alleged negligent killing of decedent.

A verdict of $25,000 was returned by the jury against Gough and from the judgment confirming that award, we granted him an appeal.

Appellant's assignments of error are that the court erred in the giving and refusal of certain instructions. Though the evidence is not in dispute, these assignments require that the facts be briefly stated.

An ordinance in effect in the city of Lynchburg when the accident occurred, entitled "Overloading Bicycles and Motorcycles," reads as follows:

"It shall be unlawful for the operator of any motorcycle or bicycle to carry or transport thereon more persons than for which regular seats securely attached thereto have been provided; and it

shall also be unlawful for any person to ride, or be transported upon, any such vehicle unless he or she occupy a regular seat.

"Any person operating or riding a motorcycle in violation of the provisions of this section shall be punished by a fine of not less than Five ($5.00) Dollars nor more than Twenty-five ($25.00) Dollars; any person operating or riding a bicycle in violation of the provisions of this section shall be punished by a fine of not less than One ($1.00) Dollar nor more than Five ($5.00) Dollars."

Shortly before the accident Overstreet, who was operating his single-seated Harley Davidson motorcycle along Eleventh street, invited Shaner to ride with him. The operator permitted Shaner to occupy the seat and he moved forward and seated himself astride the gas tank between the seat and handlebars. He then operated the motorcycle from that position, and while proceeding along Eleventh street, his motorcycle collided at the intersection of Eleventh and Polk streets with defendant's car which was being driven along the latter street, and Shaner was killed.

Appellant concedes that the evidence is sufficient to prove that he was negligent in operating his automobile and that his negligence was a proximate cause of the collision. He, however, contends that by riding upon the single-seated motorcycle along with the operator, decedent violated the city ordinance. Appellant then asserts that he was entitled to have the court tell the jury that if, after taking into consideration decedent's age, intelligence, maturity, and experience, they believed that decedent knew, or in the exercise of reasonable care, should have known that it was dangerous to occupy the one-seated motorcycle with another person, then decedent's violation of the statute was negligence, and instruct them that if decedent's negligence proximately contributed to his death, plaintiff could not recover. This contention was embodied in instruction D, which was refused by the court. It follows:

"The court instructs the jury that at the time and place of the accident it was unlawful for plaintiff's decedent, E. H. Shaner, Jr., to ride or be transported upon the motorcycle then and there owned and operated by Jimmy Berkley Overstreet, unless there was a regular seat provided for him on said motorcycle. And if the jury believe from the evidence in this case that there was no regular seat provided for him upon said motorcycle and that in riding on said motorcycle under those circumstances plaintiff's decedent, taking into account his age, general intelligence, maturity and experience,

knew, or in the exercise of reasonable care for his own safety should have known, of the danger in so doing, then he was guilty of negligence. And if the jury further believe from the evidence that such negligence either proximately caused or contributed to the death of plaintiff's decedent, then the plaintiff is not entitled to recover of the defendant in this case and the jury should find for the defendant."

The ordinance relied upon by appellant must be strictly construed for its violation is made a criminal offense. Yet that rule of construction does not abrogate the well recognized canon that a statute or ordinance should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language. Any construction that has the effect of impairing the purpose of the enactment or which frustrates, thwarts or defeats its objects should be avoided. Yet it should not be extended by interpretation or construction beyond the purpose intended by the enacting authorities.

"The purpose for which a statute is enacted is of primary importance in the interpretation thereof. Indeed, a statute is often regarded as speaking as plainly by means of the purpose which underlies it as in any other manner. In any event, in the interpretation of a statute of doubtful meaning, it is proper to take into consideration its purpose or object, or the aim, design, motive, or end in view * * *." 50 Am. Jur., Statutes, § 303, p. 283.

"It is elementary that in searching for the intention of the legislature the court must consider the object of the statute and the purpose to be accomplished." *Rockingham Co-Operative Farm Bureau, Inc.* v. *City of Harrisonburg,* 171 Va. 339, 344, 198 S. E. 908.

"In searching for the intention of the legislature, it is the duty of the court to consider the object of the statute and the purpose to be accomplished. A statute should have a reasonable construction so as to promote the end for which it was enacted." 17 M. J., Statutes, § 38, p. 291.

The ordinance was designed and enacted to remove the danger incident to the operation of overloaded motorcycles and bicycles and to afford protection to the public by lessening the hazard incident to their operation upon the streets of the city.

Decedent knowingly occupied the single seat on the motorcycle, which was meant to be used by the operator and thereby caused the operator to seat himself elsewhere upon the vehicle and operate it

with both of them riding thereon though it was equipped with a seat for but one. The purpose and intent of the ordinance were to prevent the operation of overloaded motorcycles, and decedent, as well as the operator, participated in the overloading of the vehicle and rode thereon, which necessarily resulted in its improper operation.

When the purpose and object of the ordinance are kept in mind and it is construed in accordance with the applicable canons of construction, we are brought to the inevitable conclusion that decedent, as well as the operator, violated its terms.

In instruction D the court does not tell the jury that decedent's violation of the ordinance constituted negligence *per se* which would have been unquestionably true had he been over the age of fourteen years. *Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838; *Lavenstein* v. *Maile*, 146 Va. 789, 132 S. E. 844; *Crist* v. *Fitzgerald*, 189 Va. 109, 52 S. E. (2d) 145; *Atlantic Coast Line R. R. Co.* v. *Tyler*, 124 Va. 484, 98 S. E. 641; 13 M. J., Negligence, § 15, p. 520; 65 C. J. S., Negligence, § 19.

The instruction recognized decedent's immature age (thirteen years) and the usual resultant, rebuttable presumption that he was incapable of contributory negligence. Though he had violated the ordinance, yet the instruction would have permitted the jury to determine, after considering his age, intelligence, maturity and experience, whether or not in the exercise of reasonable care he knew or should have known of the danger of riding double on the motorcycle. If the jury concluded that decedent violated the ordinance in fact, and in view of his age, intelligence, maturity and experience, he was negligent in so doing, then the instruction also rightly left to the jury for it to determine the issue of whether or not his negligence in that respect proximately caused or contributed to his death.

Virginia applies the rule that the violation of a statute or ordinance by an adult is negligence *per se*. Yet it adheres to the principle that an infant between the age of seven and fourteen years is *prima facie* presumed incapable of negligence. *Wash, Adm'r* v. *Holland*, 166 Va. 45, 183 S. E. 236.

The precise question of whether or not the violation of a statute or ordinance by an *infant under fourteen years* of age is to be judged by the same standard as a violation by one of mature years and held to be negligence *per se* does not seem to have been decided in this

jurisdiction. There is conflict of authority upon the status of infants in this respect among the states where the question has been presented. 174 A. L. R., 1166, 1174, 1190, 1194; 51 Dickinson Law Review 79. However, this instruction as asked for and refused did not state that decedent's violation of the ordinance, if proved, constituted negligence *per se*. If he in fact violated the ordinance, nevertheless it allowed the jury to take into consideration his age, intelligence, maturity and experience in determining whether or not such violation constituted negligence, and we hold that to be the correct principle. If he were guilty of negligence, then the further issue of whether or not that negligence proximately caused or contributed to his death was also properly submitted to the jury.

Clearly appellant was entitled to an instruction embodying these principles, and on the facts of this case, instruction D should have been given, and its refusal was error for which a new trial must be granted.

■ Instruction 3 stating the measure and elements of damage recoverable under § 8-636, Code of 1950, given over the objection of appellant, follows:

"The court instructs the jury, that if you find for the plaintiff, you may award such damages as to you may seem fair and just, not exceeding the sum of Twenty-five Thousand Dollars, ($25,000.00), and in ascertaining the damages, you *shall* find the same with reference to the following:

"First, to the *pecuniary loss*, if any, sustained by the father, E. H. Shaner, and mother, Cornelia D. Shaner, of the deceased, E. H. Shaner, Jr., and the sister of the deceased, Margaret Ann Shaner, *fixing such sum with reference to the probable earnings of the deceased, E. H. Shaner, Jr., taking into consideration his age, intelligence, and health, during what would have been his probable life time, if he had not been killed.*

"Second: Compensation for loss of his care, attention, and society to his father and mother, and his sister.

"Third: By such further sum as you may deem fair and just by way of solace and comfort to his father and mother, and sister, for the sorrow, suffering and mental anguish occasioned to them by his death." (Emphasis added.)

Before taking up the objections made to instruction 3, it is well to call attention to the use of the word "shall" near the end of the first paragraph. The jury is there told that in ascertaining the dam-

ages, it "shall" find the same with reference to certain elements which are thereafter set out in detail. The word "shall" was not objected to. Yet as the case is to be remanded for a new trial, it is proper to say that if upon retrial this instruction or one of similar import is requested, the court should employ some permissive word, such as "may" or "can", or a phrase, such as "are allowed to," in place of the mandatory word "shall." In awarding such damages as it "may deem fair and just," the jury should not be *required* to assess the damages with reference to enumerated elements. It is, however, correct to inform the jury that it may ascertain the damages with reference to stated elements of damage that are proper for them to consider.

The word "shall" was used in the recent case of *Wolfe* v. *Lockhart*, 195 Va. 479, 78 S. E. (2d) 654, but it was not objected to and it there escaped our attention.

We now turn to the objections made to the instruction.

Shaner was survived by his parents and a sister, but appellant contends that no pecuniary loss was suffered by them because decedent was only thirteen years old, and there was no proof that he had earned anything in the past or was earning anything when killed. On the facts proved appellant argues that it was improper to allow the jury to consider "pecuniary loss" as an element of damage. He also asserts that the phrase, "fixing such sum with reference to the probable earnings of the deceased, E. H. Shaner, Jr., taking into consideration his age, intelligence, and health, during what would have been his probable life time, if he had not been killed," was erroneous and prejudicial because there was (a) no proof of earnings, and (b) because decedent's life expectancy was not proved by mortality tables or by other evidence showing his expectancy.

Section 8-636 allows the jury to award within the statutory limit such damages "as to it may seem fair and just." Under this broad and permissive language, any "pecuniary loss" suffered by the statutory beneficiaries is clearly a proper element of damage.

"Beginning with the early case of *Matthews* v. *Warner*, 29 Gratt. (70 Va.) 570, 573, this court has given the phrase 'fair and just' a broad and liberal construction. * * *" *Matthews, et al.* v. *Hicks, Adm'r*, 197 Va. 112, 118, 87 S. E. (2d) 629.

In view of the comprehensive language of the statute, the phrase "pecuniary loss," when used in an instruction in connection with what damages are recoverable, is to be given liberal interpretation.

When so construed, it does not mean merely the loss of immediate monetary benefits, nor is it limited to the loss of pecuniary benefits susceptible of positive proof and exact estimate. In addition to financial loss, it includes present and prospective loss of services, nurture and care, and other advantages and benefits of a pecuniary nature which have been cut off or will probably be lost in the future by reason of the death of the person from whom derived or from whom they might have been expected. 16 Am. Jur., Death, § 182, p. 122; 25 C. J. S., Death, § 101(b), p. 1245; 5 M. J., Death, § 16, p. 628. Nor is it necessary that a child have earned money or have a present earning capacity for his statutory beneficiaries to suffer pecuniary loss because of his death.

"In accordance with the general rule, a parent may recover for the pecuniary loss sustained by the death of his minor child, * * *." 25 C. J. S., Death, § 101, p. 1248. 16 Am. Jur., Death, § 216, p. 148; *Ihl* v. *Forty-Second St. & G. St. Ferry R. Co.*, 47 N. Y. 317, 7 Am. Rep. 450; *Chesapeake & O. Ry. Co.* v. *Hawkins*, 174 F. 597; *Spivack, et al.* v. *J. Hahn Bakery Co., et al.*, (Mo.), 214 S. W. 166.

In *Cooke, et al.* v. *Griggs, Adm'x*, 183 Va. 851, 33 S. E. (2d) 764, decedent was a fourteen year old, first-year high school student. He assisted his family by selling papers after school hours and worked some during the summer. Notwithstanding the fact that it was not shown what he earned, the court instructed the jury that the pecuniary loss suffered by the statutory beneficiaries was an element of damage to be considered in awarding "such damages as may seem fair and just." They were also told that they might consider what his probable earnings might be and in doing so, they could take into consideration his age, intelligence and health during what would have been his lifetime if he had not been killed.

Examination of the printed record in that case shows that the instruction was objected to because it "contains elements of damage not justified by the evidence in this case." In appellant's brief it was said:

"There is no evidence as to the amount of the 14 year old boy's contribution to the support of the family, and no evidence as to his intelligence or health. *Without evidence as to his health, there is no evidence from which can be ascertained the probability of life of the decedent.*"

No merit was found in the objections, and the judgment for $7,000 was sustained.

In *Ratcliffe v. McDonald's Adm'r*, 123 Va. 781, 787, 97 S. E. 307, decedent was four years of age. Yet an instruction there given told the jury to find the damages with reference: "First—to the pecuniary loss sustained by" the beneficiaries "fixing such sum as would be *equal* to the probable earnings of the deceased child, taking into consideration his age, intelligence and health during what would have been his lifetime if he had not been killed * * *." In commenting upon his instruction, the court said:

"The statute provides that 'the jury in any such action may award such damages as to it may seem fair and just, not exceeding ten thousand dollars.' [now $25,000] No other restriction is placed upon the jury, and it was intended to leave the jury to fix the damages at such sum as the evidence in the particular case seemed to indicate was 'fair and just,' not exceeding $10,000, and the instruction given is in language which has been frequently approved by this court, and is intended simply as an aid to the jury in arriving at a verdict in accordance with the provision of the statute. We have no disposition to depart from our former rulings on the subject. * * *"

The phrase "fixing such sum as would be *equal* to the probable earnings of the deceased child, etc." was used in the *Ratcliffe* case. Yet the word "equal" was not challenged. The word "equal" when used in that connection was, however, disapproved in *Wolfe* v. *Lockhart, supra*, for it fixes too rigid a measure of damage. The instruction now under consideration omitted that objectionable word and used the preferable phrase "fixing such sum with reference to the probable earnings of the deceased, etc.," which phrase was approved in *Wolfe* v. *Lockhart, supra*, a case where decedent was only fourteen years of age and without any proved earning capacity.

■ It is permissible to introduce in evidence recognized scientific mortality tables to show decedent's life expectancy. Yet when the age, sex, health and mental capacity of decedent are proved, the jury is entitled to determine from those facts and circumstances what they, in their sound judgment, deem to be his life expectancy without resort to mortality tables. 25 C. J. S., Death, § 120, p. 1288.

In *Norfolk & Western Rwy. Co.* v. *Phillips' Adm'x*, 100 Va. 362, 41 S. E. 726, it was proved that deceased was thirty-eight years of age and working regularly as a railroad section hand. No mortality table was introduced in evidence, yet the court told the jury that they could take into consideration the pecuniary loss of the

beneficiaries "estimated upon the probable earnings of the deceased, considering his age, business capacity, experience, habits, energy and perseverance during his probable life." There, in commenting upon the lack of proof of life expectancy by introduction of mortality tables, the court said:

"We do not, however, regard it as essential that the mortality tables be proven in the case. * * *" (At page 371)

The evidence in the present case showed that when decedent was killed, he was a normal, well developed, thirteen year old school boy, enjoying good health and of average intelligence. Those proved facts were sufficient to justify an instruction allowing the jury to find that "pecuniary loss" was suffered by his statutory beneficiaries. In doing so the jurors had the right on that evidence to form their own conclusion as to what was decedent's probable life expectancy and consider what they, in their sound judgment, thought would be his probable earnings in the future.

We find no merit in the objections taken to instruction No. 3, but for reasons hereinbefore stated, the judgment will be reversed and a new trial awarded.

*Reversed and remanded.*