# Malcolm W. Cook, et al.

### v.

## Board of Zoning Appeals of the City of Falls Church

Record No. 911067

June 5, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

*William M. Baskin, Jr. (Baskin, Jackson & Hansbarger,* on briefs), for appellants.
*David R. Lasso, City Attorney* for appellee.

JUSTICE LACY delivered the opinion of the Court.

On November 3, 1989, the trustees[1] of Columbia Baptist Church (the Church) acquired title to a vacant house on a lot in Falls Church. Ten days later, the Church applied for a permit to demolish the house. By letter dated November 27, the Falls Church zoning administrator informed the Church that, because the structure had been built as a residence before 1910, the property was subject to the provisions of the Falls Church City Code § 38-39, historic and cultural conservation district ordinance (HCC District ordinance), and, that under the terms of that ordinance, the Architectural Review Board (ARB) had to approve the demolition permit.

The Board of Zoning Appeals (BZA) sustained the zoning administrator's decision and the Church appealed. The trial court upheld the BZA's finding that its construction of the ordinance was a "legally reasonable construction of the HCC ordinance" and that the decision was not arbitrary, capricious, contrary to law, or an abuse of discretion. We awarded the Church an appeal and reverse.

In 1984, the City of Falls Church enacted the HCC District ordinance which created an historical and conservation district coterminous with the boundaries of the City. The ordinance provides in relevant part:

---

[1] The trustees are Malcolm W. Cook, Garnett H. Harvey, G. Lloyd Knight, Claude H. Rhea, III, and Mary B. Wilson. The appellants in this case are these trustees and Brian Gilman, the administrator of Columbia Baptist Church.

*Sec. 38-39. HCC, historic and cultural conservation district.*

. . . .

(c) *Historic and cultural conservation ("HCC") district created.* . . . The HCC District regulations contained herein shall be applicable to the following:

(1) All structures built as residences during or before 1910, and the parcels or lots on which these structures are located, and

(2) Other designated structures and sites of historical, cultural or architectural significance.

(d) *Official register of protected structures and sites.* All designated structures and sites shall be listed in the Official Register of Protected Structures and Sites and the designation shall be recorded in the land records.

(e) *Certification of structures built during or before 1910.*

(1) The Falls Church Historical Commission shall certify to the planning department the date upon which the structure . . . was built . . . .

(2) Upon receipt of such certification, the planning department shall notify the owner(s) of the structure that the structure has been placed on the Official Register of Protected Structures and Sites, which action shall be permanent unless an appeal is filed within thirty (30) days . . . .

(3) The planning commission shall hear and decide all objections to the accuracy of the certification. . . .

(4) The owner may appeal the decision of the planning commission to the city council. . . .

. . . .

(g) Permits required for properties subject to regulation. In addition to the use regulations within the zoning districts overlaid by the HCC District, the following regulations shall apply:

. . . .

 (2) No structure on the Official Register of Protected Structures and Sites shall be demolished or moved without first obtaining a permit from the building inspector, which shall be issued only after approval of the same by the ARB, or on appeal, by the city council after consultation with the ARB.

This dispute centers on whether, as a matter of law, all structures built as residences before 1910 were deemed to be on the Official Register of Protected Property and Sites at the time the ordinance was enacted or whether successful completion of the certification procedure pursuant to § 38-39(e) is a prerequisite to placing such properties on the Official Register.

The Church maintains that only residences which have been certified in accordance with § 38-39(e) of the ordinance can be placed on the Official Register. Because its property had not gone through the certification process when the Church applied for the demolition permit, the Church insists that the property was not on the Official Register and, therefore, approval of the ARB for the demolition permit was not required.[2]

The BZA argues that residential structures built before 1910 were automatically placed on the Official Register upon adoption of the HCC District ordinance in 1984. HCC ordinance, § 38-39(c). The BZA characterizes the certification process as one which allows property owners to have their structures removed from the application of the HCC District ordinance. It is merely a "check on the accuracy of the age of the structure and of its initial use," and, the BZA notes, this process "should not be confused with being a designated structure."

 The standard of review applicable to this appeal is well established: The decision of the BZA is presumed to be correct, and

---

[2] The property at issue had been investigated by the Historical Society in 1984, but had not been certified by the Historical Commission.

the judgment of the circuit court affirming that decision is accorded the presumption of correctness on appeal to this Court. *Masterson* v. *Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 733 (1987). And we will reverse the circuit court only if the BZA applied erroneous principles of law or was plainly wrong and in violation of the purpose and intent of the zoning ordinance. *Id.* at 44, 353 S.E.2d at 732-33. Furthermore, great weight is given the consistent construction of an ordinance by the officials charged with its enforcement. *Id.* at 44, 353 S.E.2d at 733. Nevertheless, if the administrative interpretation of a portion of an ordinance is so at odds with the plain language used in the ordinance as a whole, such interpretation is plainly wrong, and must be reversed.

■ There is no dispute that the requirement of ARB approval of a demolition permit applies only to structures *on* the Official Register. HCC ordinance, § 38-39(g)(2). Subsection (d) of the ordinance states that designated structures *shall be listed* on the Official Register and the designation recorded in the land records. Even if structures were ''designated'' by the enactment of the ordinance, this language indicates that more must be done before the structure is on the Official Register or recorded in the land records. This language does not ''deem'' a designated structure to be on the Official Register any more than the designation is ''deemed'' recorded in the land records. Listing the structure on the Official Register as directed by subsection (d) refers to some further action. Subsections (e) and (f) provide the procedures necessary to accomplish that transition. Section 38-39(e)(2) provides in unequivocal terms that when the Planning Commission receives certification from the Historical Commission, the owner is notified that ''the structure has been placed on'' the Official Register and ''such action shall be permanent,'' unless appealed.

■ The requirement of certification by the Historical Commission under subsection (e) as a prerequisite to listing on the Official Register is not only required by the plain language of the act but it is consistent with the actions of the City itself. The City maintained a list entitled ''The Official Register of Protected Structures and Sites.'' That list identified only property which had completed the certification process or had been certified by the Historical Commission but removed from the list as a result of the owner's appeal. The City also maintained a map of the City which, the parties agree, *now* is also entitled ''The Official Register of Protected Structures and Sites.'' Although this map has no legend, some properties on

the map are colored in and others are merely outlined. The City's senior planner testified that when a property completed the certification process, the outlined property was colored solid, showing a distinction between those properties which have completed the certification process and those which have not.

■ Finally, in a prior contested case regarding the point at which a structure required approval by the ARB for a demolition permit, the City Council recognized that, even if § 38-39(c) did not control, "the critical date would be when the certification was made, rather than when it was recorded."[3]

We hold, therefore, that the decision of the BZA as affirmed by the trial court was plainly wrong. Accordingly, the judgment of the trial court will be reversed and we will enter final judgment for the Church.

*Reversed and final judgment.*

---

[3] The certification by the Historical Commission was made in that case on August 2, 1985, and the application for the demolition permit was made "in early August," presumably after the date of certification.